IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

JAMARCUS WALLACE                                                                              PLAINTIFF

V.                                                         CIVIL ACTION NO. 3:14CV00255-NBB-JMV

QUITMAN COUNTY, MISSISSIPPI;
DAVID L. TISDELL; AND
TISDELL LAW OFFICE, PLLC                                                              DEFENDANTS

**MEMORANDUM OPINION**

This cause comes before the court upon the motion for summary judgment of defendant Quitman County, Mississippi, and the motion to dismiss or for summary judgment or for partial summary judgment of the defendants David L. Tisdell and Tisdell Law Office, PLLC. Upon due consideration of the motions, responses, exhibits, and applicable authority, the court is ready to rule.

Factual and Procedural Background

This action arises from the arrest and two-year pre-trial incarceration of the plaintiff Jamarcus Wallace for the February 2011[1] murder of Charles Presley, a 73-year-old man who lived in Sledge, Mississippi. The plaintiff was arrested for the murder on February 28, 2011, and formally charged on March 7, 2011. His arrest was based solely on an incriminating statement given by Anthony Windless, who had been arrested for the murder on February 27, 2011. Windless was ultimately convicted, and the conviction was affirmed by the Mississippi Supreme Court.[2] Windless is currently serving a life sentence without parole.

---

[1] It is unclear whether the murder occurred on Saturday, February 26, 2011, or the following day.

[2] *Windless v. State of Mississippi*, 2015 WL 5730744 (Miss. 2015).

Mississippi Bureau of Investigation agents Brian Sullivant, Tim Douglas, and Kit Wingert, assisted in the investigation at the request of the Quitman County Sheriff's Department. MBI Agent Tim Douglas testified that he knew for a number of reasons after interviewing Windless that Windless was lying. For instance, blood splatters found on Windless' jacket matched the DNA of the victim, and no blood was discovered on the plaintiff's clothing; only one type of shoe print was found at the scene both inside and outside the victim's home; and Wallace's large physical size would have prevented him from climbing through a small window to enter the home, contradicting Windless' assertion that Wallace entered through that window. Ultimately, no physical evidence was ever discovered linking Wallace to the crime. Quitman County Sheriff's Deputy Darryl Linzy initially agreed with the MBI agents that Wallace should not be charged. Linzy testified that when he brought the absence of evidence against Wallace to the sheriff's attention, the sheriff, Oliver Parker, responded, "We're still going to charge Wallace." The sheriff, however, testified that Linzy made the decision to arrest.

Justice Court Judge Joe Brown signed the arrest warrant on March 7, 2011, and conducted Wallace's initial appearance at the jail on March 10, 2011. Brown set bond at $500,000.00 and appointed defendant David Tisdell, one of the part-time public defenders for Quitman County, to represent Wallace. Tisdell allegedly met Wallace for the first time on March 24, 2011, at the preliminary hearing, which was conducted by Justice Court Judge Brenda Cook. Wallace testified that he never went before a female judge and therefore disputes whether the preliminary hearing even took place, though Judge Cook's affidavit, a copy of the justice court docket sheet, and the deposition testimony of Linzy and Douglas all indicate that the hearing did take place.

Douglas testified that after the preliminary hearing he contacted the district attorney and notified her that the investigation showed that Wallace had nothing to do with the crime for which he was being held. According to Douglas, the district attorney advised him "we'll just handle it through the grand jury," apparently indicating to Douglas that Wallace's case would be dismissed at that time.

Wallace was bound over to the grand jury, where the case against him was presented solely by Linzy. The grand jury returned an indictment. The Mississippi Bureau of Investigation agents were not notified and did not appear before the grand jury. MBI Agent Douglas testified that this exclusion was unprecedented in his experience: "This is the first time in all the murders I've ever worked in Quitman County that I've never been notified of a grand jury and not been called to testify in that grand jury or at least be on standby." Douglas further testified that after the grand jury returned the indictment, he again contacted the district attorney and told her that she should dismiss this matter.

The plaintiff asserts that his attorney, defendant Tisdell, never filed a single motion on his behalf, never interviewed a witness or made any preparations for trial, never moved for a speedy trial, and never gave notice of alibi witnesses or produced a witness list as required by the applicable local rules and therefore could not have called any witnesses had the case gone to trial. The plaintiff asserts that Tisdell's sole effort on his behalf was to speak to capital defense attorneys in Jackson on an unspecified date who advised him that the case was to be *nolle prossed*. Tisdell asserts that after receiving this information, he repeatedly asked the district attorney, Brenda Mitchell, when she planned to move for dismissal of the case. Mitchell testified, however, that the defense attorney had nothing to do with her *nolle prossing* the case.

3

Tisdell stated that his reason for making no trial preparations was that he was simply waiting for the *nolle pros* order.

The plaintiff languished in jail for over two years – from February 2011 until March 2013, when he was finally released after the circuit court's entry of the Order to *Nolle Prosequi*. The plaintiff asserts that the *nolle pros* order was entered only after Agent Douglas contacted the district attorney and presented her with an ultimatum:

> [Y]ou've got a week or two to get that boy out of jail, or I'm fixing to call the Department of Justice . . . . I'm going to call the civil rights division in D.C., and I'm going to tell them that you have violated this young man's rights . . . . You better get him out of jail.

Douglas Deposition, p. 44.

The plaintiff filed this suit on December 1, 2014, pursuant to 28 U.S.C. §§ 1343 and 1367 and 42 U.S.C. § 1983, asserting both federal question jurisdiction, 28 U.S.C. § 1331, and diversity jurisdiction, 28 U.S.C. § 1332. The plaintiff brings claims against Quitman County based on his alleged arrest without probable cause and excessive bail, including violations of the Fourth, Eighth, and Fourteenth Amendments. He further asserts that the Tisdell defendants are liable for negligence and that Quitman County and the Tisdell defendants violated his Sixth, Eighth, and Fourteenth Amendment rights by failing to provide adequate counsel. The parties subsequently filed the dispositive motions addressed herein.

Standard of Review

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, the movant has the initial

burden of showing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If the movant makes such a showing, the burden then shifts to the non-movant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324 (quoting Fed. R. Civ. P. 56(c), (e)).  Before finding that no genuine issue for trial exists, the court must first be satisfied that no rational trier of fact could find for the non-movant.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[T]he issue of fact must be 'genuine.'  When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  *Id.* at 586.  "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment."  *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003).  Further, self-serving "affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment."  *Clark v. America's Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997).

The court must render summary judgment in favor of the moving party if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue."  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 135 (2000).  The Supreme Court has cautioned, however, that the ruling court must not encroach upon the functions of the jury.  The Court stated in *Reeves* as follows:

> [T]he court must review all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party, but making no credibility determinations or weighing any evidence.  The latter functions, along with the drawing of legitimate inferences from the facts, are for the jury, not the court.

5

Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe.

*Id.* (citations omitted). "Summary judgment, although a useful device, must be employed cautiously because it is a final adjudication on the merits." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989).

### Analysis

At the outset, the court notes that the plaintiff's claim regarding excessive bail is not viable – a fact which the plaintiff acknowledges while also maintaining that the holding which bars the claim is incorrect. Under *Cunningham v. City of West Point, Miss.*,[3] a local government may not be held liable for the acts of its judges. The plaintiff asserts that this holding is in conflict with *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), which held that a county is liable for the acts of its county prosecutor when that prosecutor makes a final policy decision regarding constitutional rights, and *Owen v. City of Independence, Mo.*, 445 U.S. 622, 651 (1980), which held that local governments are not protected by the immunity defenses available to human defendants sued in their individual capacities. The plaintiff recognizes, however, that this court must follow Fifth Circuit precedent which currently compels dismissal of the plaintiff's excessive bail claim.

As to the plaintiff's remaining claims, the court finds the existence of genuine issues of material fact including, but not limited to, whether defendant Tisdell provided adequate representation of Wallace; whether Sheriff Parker acted with malice against Wallace; and whether probable cause to arrest Wallace existed.

---

[3]2009 WL 316331 (N.D. Miss. 2009), *aff'd*, 380 Fed. App'x 419 (5th Cir. 2010), *cert. denied*, 522 U.S. 1012 (2010).

Conclusion

Because genuine issues of material fact exist, the parties' dispositive motions must be denied except as to the excessive bail claim addressed above. A separate order in accord with this opinion shall issue this day.

This, the 20th day of May, 2016.

/s/ Neal Biggers
**NEAL B. BIGGERS, JR.**
**UNITED STATES DISTRICT JUDGE**